THE PEOPLE OF THE STATE OF NEW YORK *v.* FRANK CAMPBELL, as Late Comptroller of the State of New York, and JAMES A. ROBERTS, Comptroller of the State of New York, Respondents.

*Railroad corporation — readjustment of a franchise tax under section* 19 *of chapter* 542 *of* 1880 [*added by chapter* 463 *of* 1889] *— sufficiency of the verification of the petition — discretion of the Comptroller in receiving evidence — property employed without the State — bonds and stock of foreign corporations, their legal situs.*

A petition was made to the Comptroller of the State of New York by a railroad corporation, under the provisions of section 19 of chapter 542 of the Laws of 1880 (added by chapter 463 of the Laws of 1889), for the readjustment of the franchise tax assessed against it for certain years. The petition was signed by John Carstensen, comptroller of such corporation. The verification to the petition was not signed by him and was in the following form :

"STATE OF NEW YORK,  } *ss.:*
*City and County of New York,* }

" John Carstensen, being duly sworn, and being duly known to me as the Comptroller of the New York Central and Hudson River Railroad, states that he is the said comptroller and that the facts set forth in the foregoing statements are correct and true to the best of his knowledge and belief.

"[L. S.]            D. W. PARDEE,

" *Notary Public,* Kings County.

' Cert. filed in New York County, *Nov.* 28, 1893."

*Held*, that Carstensen, having signed the petition and being named in the affidavit of verification, it was not necessary for him to sign the verification;

That the effect of the affidavit of verification was not impaired because of the words " to the best of his knowledge and belief " at the end thereof.

In reviewing the decision of the Comptroller, under the provisions of section 19 of chapter 542 of the Laws of 1880 (added by chapter 463 of the Laws of 1889), the General Term of the Supreme Court is not governed by the same rules as are applicable on an appeal from a judgment entered in an ordinary action of law. The strict rules of evidence applied in actions do not govern in a proceeding before the Comptroller, and he may receive affidavits as well as evidence.

The Comptroller of the State of New York, in a proceeding brought before him for a readjustment of a franchise tax under the provisions of section 19 of chapter 542 of the Laws of 1880 (added by chapter 463 of the Laws of 1889), is in fact an assessor; and, on a motion for the revision of an assessment on account of a mistake as to the amount of the capital stock of a corporation employed in the State, the Comptroller may usually determine for himself what evidence he requires of the facts; and it is competent for him to rely upon the books and records of the corporation showing the amount of its property employed out of the State, and the General Term of the Supreme Court will not reverse his finding on the ground that it was based on such evidence.

That part of the capital stock of a railroad company which is invested in freight cars, permanently engaged out of the State, is not subject to a franchise tax under the provisions of chapter 542 of the Laws of 1880, and the acts amendatory thereof and supplemental thereto, and the stock of foreign corporations, in which a portion of the capital stock of such railroad company is invested, is not capital stock used in the State of New York.

The bonds of foreign corporations, owned by a railroad company incorporated under the laws of the State of New York, are presumably held at the office of such company within this State, and, in determining the amount of its franchise tax, such bonds, as well as all choses in action, unless kept, employed or used without the State, have their situs at the domicile of the owner, and are properly included as part of the capital stock of the railroad corporation.

CERTIORARI issued out of the Supreme Court and attested on the 24th day of March, 1894, directed to Frank Campbell, as late Comptroller of the State of New York, and James A. Roberts, as Comptroller of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all their acts and proceedings relative to the revision and readjustment of the amount of taxes of the New York Central and Hudson River Railroad Company.

*T. E. Hancock, Attorney-General,* and *G. D. B. Hasbrouck, Deputy Attorney-General,* for The People.

*J. Newton Fiero, Willard Brown* and *Charles W. Wells,* for Frank Campbell, late Comptroller.

*Nathaniel W. Norton,* for Comptroller James A. Roberts.

PUTNAM, J.:

The New York Central and Hudson River Railroad Company, for the years 1885, 1886, 1887, 1888, 1889, 1890 and 1891, made the annual report required by chapter 542, Laws of 1880, and the several acts amendatory and supplementary thereto, and paid the tax required by said statute on its franchise or business. It will be seen by an examination of its reports contained in the case, on which the annual franchise tax was computed, that it failed to state in either the amount of its capital stock employed within the State, as required by section 11 of chapter 542 of the Laws of 1880 (added by chapter 151, Laws of 1882), as amended by chapter 501, Laws of 1885.

The Comptroller, therefore, assessed the corporation for each year above mentioned upon its full capital stock, and the tax by him assessed was duly paid.

On or about November 29, 1893, in pursuance of the provisions of section 19 of chapter 542 of the Laws of 1880 (added by chapter 463 of the Laws of 1889), the said corporation applied to the Comptroller for a revision or readjustment of said franchise tax so assessed for each of the years above mentioned.

The application was made by a petition or communication to the Comptroller, purporting to be made by the New York Central and Hudson River Railroad Company, and signed by J. Carstensen, its comptroller. The verification to said communication was not signed by said Carstensen, and was as follows:

"STATE OF NEW YORK,    ⎱
*City and County of New York,* ⎰ *ss.:*

"John Carstensen, being duly sworn, and being duly known to me as the Comptroller of the New York Central and Hudson River Railroad, states that he is the said comptroller, and that the facts set forth in the foregoing statements are correct and true to the best of his knowledge and belief.

"[L. S.]                    D. W. PARDEE,
                "*Notary Public,* Kings County.

"Cert. filed in New York county, *Nov.* 28, 1893."

The application for a revision was heard and granted. The Comptroller allowed the railroad company the following credit upon its tax for the years above mentioned : " 1885, $10,749.93 ; 1886, $12,455.71; 1887, $13,179.81; 1888, $13,430.60; 1889, $12,381.06; 1890, $12,735.13; 1891, $12,795.24," a total of $87;727.48.

The matter comes before this court upon a certiorari issued pursuant to the provisions of section 20 of chapter 542 of the Laws of 1880 (added by chapter 463 of the Laws of 1889). The learned Attorney-General urges that the statement of the railroad company used before the Comptroller on the revision was not properly verified, and was not evidence of the facts therein stated, and that the Comptroller had no sufficient proof before him to justify the correction of taxes which had been duly assessed and paid. Also, that no notice of the application for the revision was served upon the Attorney-General according to the previous practice of the Comptroller's office. Also, that certain bonds owned by the corporation during the years in question were illegally held by the Comptroller to be a part of its capital stock employed out of the State.

As to the objection that the petition for the revision signed by J. Carstensen, the comptroller of the railroad, was not properly verified, we are of the opinion that Mr. Carstensen, having signed the petition and being named in the affidavit of verification, it was not necessary for him to sign the latter. (*Haff* v. *Spicer & Ano.*, 3 Caines, 190 ; *Jackson ex dem. Kenyon* v. *Virgil*, 3 Johns. 540.)

Nor was the effect of the affidavit of verification impaired because of the words " to the best of his knowledge and belief " at the end thereof. (*Pratt* v. *Stevens*, 94 N. Y. 387.)

By the petition of the railroad company signed by Carstensen it appears that he had examined the records kept by the company, and that during the years in question, as shown by the said records, a certain amount of the capital stock of the railroad company was employed out of the State. It is claimed by the People that there was no proof before the Comptroller that the books and records of the railroad company were correct, and hence there was no competent evidence before him to justify the revision.

As we understand the petition and affidavit, Mr. Carstensen states in the petition that he had obtained the figures appearing in his statement from the records and books, and believes them correct,

and in the affidavit says that the facts set forth in the petition are correct and true. We think that in such a case the papers were sufficient to authorize the determination of the Comptroller.

In reviewing a decision of the Comptroller, under the provisions of the act of 1889, we are not governed by the same rules as are applicable on an appeal from a judgment entered in an ordinary action of law. The strict rules of evidence applied in actions do not govern in a proceeding before the Comptroller. He may receive affidavits as evidence. (*People ex rel. Harlan & Hollingsworth Co.* v. *Campbell*, 139 N. Y. 68.)

The Comptroller is in fact an assessor, and may determine the matter submitted to him upon evidence which would not be deemed admissible in a common-law action. (*People ex rel. Roet¹ling's Sons' Co.* v. *Wemple*, 138 N. Y. 582, 583.)

On the application for a revision, the railroad company submitted a statement taken from its records as evidence. As said in *People ex rel. Harlan & Hollingsworth Co.* v. *Campbell* (*supra*) at page 71, the case shows that the Comptroller received the petition as evidence of the facts therein set forth, and it does not appear that any one objected to it as not competent. The Comptroller might have required further proof, but he was satisfied that the statement taken from the books of the company showed the actual amount of its capital stock employed out of the State. In his return he says : " The NewYork Central and Hudson River Railroad Company submitted evidence to the Comptroller which showed the employment of a portion of its capital stock out of the State and how much thereof was so employed, and the Comptroller thereupon resettled the accounts of such company so as to confine the tax to the capital stock employed within the State of New York as required by law. * *.* The evidence submitted satisfied him of the truth of the facts alleged, and warranted him in entering the order correcting the error in the accounts as theretofore settled."

We suppose, as a matter of fact, that the reports made to the Comptroller by corporations in pursuance of the act of 1880 are usually drawn from their books and records. It is difficult to see how otherwise corporations could make a report required by the act. Had this railroad company, in making its annual reports for the years, given the amount of capital stock employed out of the

State, and so stated from statistics contained in its books and records, the Comptroller undoubtedly would have been authorized to deduct the amount of capital stock so said to be employed out of the State from information derived from the books of the company. We see no reason to doubt that, on the motion for a revision of an assessment on account of a mistake as to the amount of capital stock employed in the State, the Comptroller may also rely upon information derived from the books of the company. We are of opinion that the Comptroller may usually determine for himself what evidence he requires of the facts on the motion for a revision; that it was competent for him to rely upon the books and records of the company showing the amount of its property employed out of the State, and that this court cannot properly reverse the finding of the Comptroller on the ground that it was based on such evidence.

The objection is also taken to the revision made by the Comptroller on the ground that no notice of the application for a revision was given to the Attorney-General according to the usual practice. It is sufficient to say in answer to this position that the return in the case of Comptroller Campbell controverts the affidavit of Charles E. Kilmer in regard to the existence of any such practice in cases of revision when the application therefor is made subsequent to the payment of the tax.

The statement from the records of the New York Central and Hudson River Railroad Company which the Comptroller received in evidence and which we think he had, in his discretion, a right to regard, as to the amount of the capital stock of the company employed out of the State during the years in question, showed that during each of said years a large number of freight cars were permanently occupied out of the State and that the company also had a portion of its capital stock invested in the stock of foreign corporations and also in corporate bonds.

It does not require a discussion or citation of authorities to show that such part of the capital stock of the railroad company as was invested in freight cars permanently engaged out of the State was not subject to the franchise tax under the provisions of chapter 542, Laws of 1880, and the acts amendatory and supplementary thereto. (*Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Commonwealth* v. *Del., L. & W. R. R. Co.*, 145 Penn. St. 96.)

It is equally clear that the stock of foreign corporations in which a portion of the capital stock of the company was invested was not capital stock used in the State. (*People ex rel. Edison Electric Light Co.* v. *Campbell,* 138 N. Y. 543–546.)

We, therefore, think that the Comptroller was justified in making the revision he did of the tax assessed against the railroad company as far as it was assessed on that portion of the capital stock of the corporation invested in freight cars permanently engaged out of the State and in the stock of foreign corporations.

We, however, are unable to agree with the Comptroller that the bonds of foreign corporations held by the New York Central and Hudson River Railroad Company were a part of its capital stock employed out of the State. The amount allowed by the Comptroller on account of such bonds during the years in question is stated to be $13,560.15. Nothing appears in the case to show that those bonds were employed out of the State. In *People ex rel. E. E. L. Co.* v. *Campbell* (*supra*), at page 547, it is said, a similar question arising in that case to the one under consideration : " Those bonds were presumably held at its office in this State, and such bonds, as well as all *choses in action,* unless kept, employed or used outside of the State, have their *situs* at the domicile of the owner." It is suggested by the learned counsel for the respondents that the clause in the opinion of EARL, J., above quoted, was *obiter.* We think, however, that the opinion of the eminent judge who delivered the opinion of the Court of Appeals in the case cited may be considered an authority and properly followed, although not absolutely necessary in the decision of the case in which it was written.

Our conclusion, therefore, is that the allowance made to the New York Central and Hudson River Railroad Company on the revision should be corrected by deducting therefrom the amount allowed on account of capital stock invested in the bonds of foreign corporations during the years in question, and as so modified the decision of the Comptroller should be confirmed, without costs to either party.

MAYHAM, P. J., and HERRICK, J., concurred.

Decision of the Comptroller modified as per opinion and as modified affirmed, without costs to either party.